UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BAYNE AUGUST
ALBRECHT,

              Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.
_____/

Case No. 2:14-cv-12452

District Judge Stephen J. Murphy

Magistrate Judge Anthony P. Patti

**RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DE 13) AND TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 9)**

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment, **DENY** Plaintiff's motion for summary judgment, and **AFFIRM** the

Commissioner's decision.

**II.**     **REPORT**

Plaintiff, Bayne August Albrecht, brings this action under 42 U.S.C. §§

405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying his application for disability insurance. This

matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 9), the

Commissioner's memorandum in opposition and cross motion for summary judgment (DE 13), and the administrative record (DE 8).

When this action began, Plaintiff's was represented by attorney, Richard J. Doud of the law firm of Davidson, Breen, Doud, Steele & Ferguson, P.C. (the "Davidson firm"). During the pendency of this action, this case was temporarily transferred to a three-judge panel for consideration of the Commissioner's request for a global 60 day stay and the question of substitution of counsel in all pending cases of attorney Richard J. Doud. (*See* Text-Only Order dated 5/20/15 and Administrative Order 15-AO-033.) On June 9, 2015, the case was stayed. (DE 15.) On October 19, 2015, the panel concluded its work and transferred the case back to the judge to whom the matter was originally assigned, indicating that it was the responsibility of the originally assigned judge to determine when to lift the stay in the case. (*See* Text-Only Order dated 10/19/2015 and Administrative Order 15-AO-045.) This Court lifted the stay in this matter on January 8, 2016. (DE 18.)

As a result of the panel's work, the Davidson firm was directed to send Plaintiff a letter indicating that no lawyers at that firm are permitted to represent her in this case. The letter was also to provide him with the names of other lawyers who handle Social Security disability cases, as well as the State Bar of Michigan's attorney referral telephone number. Plaintiff was given 60 days from October 19, 2015 to retain a new lawyer or proceed without the assistance of

counsel.  To date, there is no indication that Plaintiff has retained alternate counsel.
On January 8, 2016, the Court issued a notice to inform Plaintiff that he could file
a new motion for summary judgment or supplement the existing motion by
informing the Court of his intention to do so on or before January 15, 2016.  The
Court did not receive any notice from Plaintiff and will therefore proceed on the
current briefing.

### A.    Background

Plaintiff protectively filed his application for benefits on September 22,
2011, alleging that he has been disabled since March 9, 2011.  (R. at 43.)
Plaintiff's application was denied and he sought a *de novo* hearing before an
Administrative Law Judge ("ALJ").  ALJ JoErin O'Leary held a hearing on
January 4, 2013 and subsequently determined that Plaintiff was not disabled within
the meaning of the Social Security Act.  (R. at 43-54 and 101-123.)   On April 25,
2014, the Appeals Council denied Plaintiff's request for review.  (R. at 1-4.)  ALJ
O'Leary's decision became the Commissioner's final decision.  Plaintiff then
timely commenced the instant action.

### B.    Plaintiff's Medical History

#### 1.    Medical Impairments

According to accounts contained in his medical records, on March 10, 2010,
Plaintiff had been working "outside on a tractor [or forklift] and was found

crawling inside with facial abrasions and lacerations of [his] right eye and a deformed right thigh and knee." (R. at 293; *see also* 317, 480, 518.) He did not remember what happened (likely because he suffered a seizure), but the forklift may have gone over his leg. (R. at 317 and 480.) There is also some indication that he may have been on the phone with his girlfriend at the time of the accident. (R. at 293.) Plaintiff's coworkers took him to the emergency room at St. Mary's of Michigan due to blunt trauma with a possible crush injury to his lower right extremity, along with altered mental status and a head injury. (R. at 292.) He underwent a fasciotomy to repair a right popliteal injury and several ligaments. (R. at 295.)

Plaintiff saw K.Fram, M.D., P.C., on March 15, 2010, apparently while still an in-patient. (R. at 509.) He reported feeling a "cramp in his brain" a week before, and noted that he had stopped taking his seizure medication. Dr. Fram found tenderness over the lumbar and lower thoracic spine and recommended that Plaintiff continue on his pain medication. (Id.) He was discharged from the hospital in stable condition on March 26, 2010, with instructions to follow-up with his surgeons, take it easy, and bear no weight on his right side. (Id.)

Plaintiff underwent multiple surgeries during and immediately following his hospitalization, including a March 15, 2010 irrigation and debridement of his wound, a March 22, 2010 irrigation of the wound on his right calf and knee (R. at

4

299), a March 24, 2010 right knee aspiration (R. at 297), and an April 1, 2010 aspiration of his right knee. (R. at 321.) He saw Dr. Fram on July 13 and July 19, 2010. (R. at 505-507.) Dr. Fram performed a sciatic nerve block, which Plaintiff tolerated well. (R. at 506.) Dr. Fram recommended that Plaintiff continue on his medication therapy, avoid lifting more than thirty pounds as well as excessive bending, twisting, pushing, and pulling, and continue low-back strengthening exercises at home. (R. at 507.) On November 8, 2010, Dr. Fram recommended that Plaintiff avoid lifting more than twenty pounds. (R. at 503.) He made similar recommendations on March 8, 2011 and July 15, 2011, noting on March 8, 2011 that Plaintiff was discharged from spinal rehabilitation for noncompliance. (R. at 497, 501, and 583.)

On April 23, 2011, Plaintiff experienced a seizure and was taken by ambulance to the Marlette Regional Hospital. (R. at 362-69.) He was discharged the same day and appeared stable. (R. at 369, 375-76.) He followed up with Jeffrey W. Carney, M.D., FACC, on April 27, 2011, and Dr. Carney indicated that Plaintiff was "doing well from a cardiac standpoint." (R. at 479.)

On June 13, 2011, Plaintiff presented to the emergency room again with complaints of right leg numbness/edema and post-surgical swelling. (R. at 354-55.) He was started on Bactrim and released. (R. at 357.)

Plaintiff underwent a follow-up CT of his right lower leg on June 22, 2011, which was negative for fracture and tear. (R. at 451.) On June 28, 2011, Plaintiff saw orthopedic surgeon Edward Wojtys, M.D., with complaints of right knee pain, swelling, and instability with numbness. (R. at 480.) Dr. Wojtys recommended that Plaintiff continue with physical therapy. At his June 30, 2011 follow-up visit with Byron Chamberlain, M.D., he noted that he was getting better despite some tightness. (R. at 452.)

On August 16, 2011, Plaintiff saw Dr. Wojtys, who informed him that it could take two years for his knee to return to being fully functional. (R. at 516.) Plaintiff reported that he had missed multiple physical therapy appointments in Ann Arbor because he was "very busy with his work schedule as a farmer up in the Michigan thumb" and "has also been busy judging cattle." (Id.) Dr. Wojtys stressed the need for physical therapy and exercise to improve his strength. On September 20, 2011, Dr. Wojtys indicated that he was making good progress. (R. at 518.) Likewise, on October 25, 2011, Dr. Wojtys noted that he was pleased with Plaintiff's overall strength and prescribed a brace for him to use. (R. at 520.)

Plaintiff was seen at the Comprehensive Epilepsy Clinic on November 7, 2011. (R. at 528-31.) He reported that his seizures began in 2008 and happened when he stopped taking his seizure medication, Neurontin. (R. at 428.) He was

assessed as not having full control over his condition and his medication was adjusted.  (R. at 530.)

Plaintiff saw Dr. Fram on April 10, 2012.  (R. at 574-75.)  Dr. Fram recommended that Plaintiff continue back and muscle strengthening exercises at home, including daily walks, and avoid heavy lifting and excessive bending, twisting, pushing, and pulling.  He underwent an MRI of the brain on April 13, 2012, which identified no significant abnormality but revealed extensive inflammatory changes in the paranasal sinuses.  (R. at 584-85.)

On May 1, 2012, Plaintiff had right knee ACL reconstruction with Achilles tendon allograft.  (R. at 591-93.)  He tolerated the procedure well and was discharged the same day.  Dr. Wojtys indicated that Plaintiff's prognosis was good. (R. at 589.)  He was seen for follow-up on April 30, 2012.  He was instructed to commit more time to strength training activities to improve his strength.  (R. at 750.)

### 2.    Mental Impairments

Plaintiff underwent a psychiatric evaluation with Mohammad Jafferany, M.D., on June 2, 2011.  (R. at 731-33.)  Dr. Jafferany described Plaintiff as alert and oriented with an average fund of knowledge and cognitive abilities.  (R. at 733.)  He recommended that Plaintiff adjust his medication.  On January 23, 2012, Plaintiff underwent a psychiatric medical evaluation with Michael Brady, Ph.D.,

7

on behalf of the State agency.  (R. at 567-570.)  Plaintiff reported that on a typical day he woke at 7:00 A.M., visited with friends, watched television, and did his own cooking and cleaning.  (R. at 568.)  Dr. Brady concluded that Plaintiff's ability to interact with others was good, as was his ability to understand, recall, and complete tasks.  His ability to maintain concentration was fair and he was not impaired in his ability to withstand normal workplace stressors.  (R. at 570.)

Plaintiff saw Douglas L. Foster, M.D., on March 1, 2012.  (R. at 729-30.) Dr. Foster recommended a medication change and psychotherapy in order to help with Plaintiff's anxiety and esteem issues.  He saw Plaintiff again on April 5, 2012, and noted that he had situational problems and needed a therapist.  His affect was described as irritable and restless.  (R. at 727.)  Plaintiff presented to the Michigan Behavioral Health Institute for therapy on April 23, 2012, May 14, 2012, and June 26, 2012.  (R. at 724-26.)  On June 26, 2012, Dr. Foster noted that Plaintiff showed no signs of psychosis or of a thought process disorder.  (R. at 723.)

### C.   Hearing Testimony

#### 1.   Plaintiff's Testimony

In describing his impairments at the January 4, 2013 hearing, Plaintiff testified that "the majority of it is my leg."  (R. at 106.)   He indicated that his leg had been "operated on 16 times," and noted that it impaired his balance and caused numbness and tingling in his feet and toes.  (Id.)  He took medication for his leg

8

pain, which caused him to be dizzy and nauseous.  (Id.)  Plaintiff also testified that

he had a back injury, causing his back to be "constantly sore."  (Id.)  He indicated

that his back and leg pain flared to worse than normal about three times per week.

(R. at 107.)  He noted that he elevated his foot above his waist "in my little office,

at my shop," and took Vicodin to deal with the pain.  (R. at 107-108.)  Plaintiff

also testified that he only slept three to four hours per night.  (R. at 108.)

Plaintiff testified that he could sit comfortably for a half an hour, stand

unassisted for fifteen to twenty minutes, and can alternate between the two for a

few hours before needing to lie down.  (R. at 109.)  He indicated that his doctor

restricted him to lifting no more than fifteen pounds.  Plaintiff testified that he had

trouble bending, because it aggravated his back pain, and climbing stairs, because

of his leg issues.  (R. at 110.)

Plaintiff also testified to mental issues, including depression and anger

problems.  (R. at 110.)  He noted that the depression came and went, but was

exacerbated by money being tight.  (Id.)  According to Plaintiff, his mental health

problems caused dizziness and "grumpiness."  (R. at 111.)  He also noted that he

had some trouble remembering a list of things to buy at the store.  (R. at 111-12.)

Plaintiff testified to having had a seizure seven or eight months before the

hearing.  (R. at 112.)  He indicated that it was possible the seizures were stress-

induced.  According to Plaintiff, the combination of his physical and mental

impairments would cause him to call in sick two to three days per week. (R. at 113.)

The ALJ discussed a note from Dr. Wojtys stating that Plaintiff "does manage a farm by himself." (R. at 114, 713.) Plaintiff revealed that he owned a farm, including forty-five acres of land and beef cattle. He noted that he and his girlfriend manage the farm, which takes about one hour, three days per week. (R. at 116.) Plaintiff testified that he had sold many of the animals and only planted 5.9 acres of corn, which reduced the amount of chores from previous years. (R. at 114.) He indicated that he operated tractors "sometimes," and cared for the cattle, including vaccinations and making sure they had hay. Plaintiff stated that he also spends some time in the office at the farm. Plaintiff further testified that he has visitation with his children every weekend, and indicated that they help with farm work, along with his neighbors. He was unsure how much money he had made on the farm in the past year. (R. at 115.)

### 2.    Vocational Expert Testimony

Ms. Tremblay testified as the Vocational Expert ("VE") at the administrative hearing. (R. at 119-123.) The ALJ began by classifying Plaintiff's past relevant work as unskilled to semiskilled, medium to heavy. She then presented a series of hypotheticals to the VE. In the first hypothetical, the ALJ asked the VE to

determine if a hypothetical individual of Plaintiff's age, education, and work experience could perform his past relevant work with the following limitations:

> This individual would be limited to sedentary exertional work. They could not operate foot controls on the right . . . . This individual should not climb ladders or scaffolds. This individual should avoid unprotected heights, moving, mechanical parts or commercial driving. Due to a combination of impairments, as well as medication side effects, they'd be limited to simple, routine tasks.

(R. at 120-21.) The VE testified that the hypothetical individual could not perform Plaintiff's past work. (Id.) However, according to the VE, the hypothetical individual could perform a variety of jobs in the sedentary unskilled category: packager, with a specific vocational preparation ("SVP") [1] of 2 and 2,1000 jobs in the State of Michigan; assembler with an SVP of 2 and 1,800 jobs in the state; and information clerk, with an SVP of 2 and 2,500 jobs in the state. (R. at 121.)

The ALJ then added to the above hypothetical the requirement that the individual would need to elevate his or her right leg to chest level for two hours of a regular eight-hour workday. The VE testified that this would be work preclusive. The VE also testified that being absent from work more than four times per month would be work preclusive. (R. at 122.)

---

[1] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4P.

## D.  THE ADMINISTRATIVE DECISION

On March 19, 2013, the ALJ issued her decision.  (R. at 43-54.)  At Step 1
of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged
in substantially gainful activity since March 9, 2011.  (R. at 45.)

At Step 2, the ALJ found that Plaintiff had the following severe
impairments: seizure disorder, right lower extremity crush injury status post-
surgery, degenerative disc disease, right knee ACL reconstruction, and adjustment
disorder.  (R. at 45.)

At Step 3, the ALJ found that Plaintiff did not have an impairment or
combination of impairments that met or medically equaled one of the listed

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).
Although a dispositive finding at any step terminates the  review, *see Colvin v.
Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential
review considers and answers five questions:

1.      Is the claimant engaged in substantial gainful activity?
2.      Does the claimant suffer from one or more severe impairments?
3.      Do the claimant's severe impairments, alone or in combination, meet
        or equal the criteria of an impairment set forth in the Commissioner's
        Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.      Considering the claimant's residual functional capacity, can the
        claimant perform his or her past relevant work?
5.      Considering the claimant's age, education, past work experience, and
        residual functional capacity, can the claimant perform other work
        available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th
Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically,

Listings 1.03, 1.04, 1.06, 11.02, and 11.03.  (R. at 45-48.)

Between Steps 3 and 4 of the sequential process, the ALJ evaluated

Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff had

the capacity to perform sedentary work with the following limitations:

> [H]e is unable to use foot controls on the right.  The claimant should
> not climb ladders or scaffolds.  He should avoid unprotected heights,
> moving mechanical parts, and commercial driving. Due to a
> combination of impairments and medication side effects, the claimant
> is limited to performing simple, routine tasks.

(R. at 48.)

The ALJ determined at Step 4 that Plaintiff was unable to perform his past

relevant work.  (R. at 52.)

At Step 5, the ALJ concluded that Plaintiff was capable of performing other

jobs that exist in significant numbers in the national economy.  (R. at 53-54.)  She

therefore concluded that Plaintiff was not disabled under the Social Security Act.

### E.  STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

---

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th
Cir. 2002).

if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that

14

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.  ANALYSIS

Plaintiff asserts that the ALJ erred by improperly discounting his credibility (DE 9 at 6-11, 15), which in turn led to a cascade of errors, namely an improper hypothetical to the VE due to an inaccurate RFC (Id. at 10-12.)  In addition, he briefly mentions the treating source rule, but does not explain how the ALJ erred in this regard.

The Commissioner opposes the motion and asserts that the ALJ's opinion is supported by substantial evidence.  She also argues that Plaintiff has waived both his RFC and treating source rule arguments.

Plaintiff has been put in an unfortunate situation by his former counsel.  As noted above, due to myriad issues, his counsel of record and his law firm were removed from this case (and all Social Security appeals in the Eastern District of Michigan).  Plaintiff did not take the opportunity to retain new counsel and chose

not to re-file or supplement the current briefing, despite this Court's invitation to do so.  (DE 18.)  However, in an abundance of caution, I will not restrict my review to the arguments presented in Plaintiff's brief, but will consider the entire record to ensure that substantial evidence supports the ALJ's decision.  *See Brinkley v. Comm'r of Soc. Sec.*, No. 14-13560, 2015 WL 1637598, at \*2-3 (E.D. Mich. Apr. 13, 2015) (where Plaintiff is *pro se*, the Court may "review[] the administrative record for obvious errors in order to affirm the Commissioner's conclusions . . . ."  (internal citations and quotations omitted)).

### 1.   The RFC is Supported By Substantial Evidence In Light of the Proper Weighing of Credibility

Plaintiff's RFC is "the most [he or she] can still do despite the physical and mental limitations resulting from [his or] her impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(3), 416.927(e).  "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'"  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

Pursuant to Social Security Rule 96-8p, the RFC assessment must include:

[A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).     In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8-, 1996 WL 374184, at *6-7.

Here, Plaintiff takes issue with the RFC assessment solely because it was inconsistent with his testimony, which he alleges the ALJ to have improperly deemed less than credible.  Plaintiff argues that objective medical evidence supports his testimony.  As support for this position, he points to:

- A March 10, 2011 CT of his thoracic spine revealing "mild degenerative changes" and "minimal loss of height of the superior endplates of T12 and L1 vertebral bodies . . . due to Schmorl's node." (R. at 661);

- A March 10, 2011 CT of his lumbar spine indicating "chronic bilateral L5 pars defect with 2 mm anterolisthesis over S1" and "mild degenerative spinal stenosis at L4-L5 level" (R. at 663);

- Dr. Fram's April 19, 2012 impression of "[l]ow back pain secondary to post-traumatic fracture to the thoracic and lumbar spine with bilateral S1 Radiculopathy" (R. at 574);

- The fact that he underwent a March 10, 2011 exploratory surgery of his right leg (R. at 626-27);

- A June 17, 2011 report from St. Mary's of Michigan revealing that Plaintiff complained of numbness and edema (R. at 638);

17

- The fact that Plaintiff underwent a right ACL reconstruction on April 30, 2012 (R. at 713-14); and

- An April 10, 2012 report indicating that Plaintiff had a seizure disorder (R. at 574-75).

According to Plaintiff, these records lend credibility to his subjective reports that he needed to elevate his legs to chest level two hours per work day and would be absent more than four times per month.  I conclude that the ALJ's RFC assessment is supported by substantial evidence and the ALJ did not err by discounting Plaintiff's credibility.

The ALJ's "assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 469, 475 (6th Cir. 2007).  "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).

Here, the ALJ pointed out multiple contradictions in the medical reports and Plaintiff's testimony that tend to undermine his credibility.  For example, he ALJ pointed out that on September 20, 2011, Plaintiff reported that his leg was getting

18

stronger and his range of motion was improving, which contradicts his testimony that his pain was disabling.  (R. at 518.)   Moreover, Plaintiff informed Dr. Wojtys that he had only been to physical therapy in Ann Arbor two or three times because he was so busy with his work schedule as a farmer up in the Thumb Area of Michigan and also with judging cattle, which contradicts his testimony that he spends very little time on farm work, and calls into question his complaints of disabling pain.  (R. at 516.)   At the hearing, Plaintiff testified that he sold a number of his cattle, leaving him with only 31 of an all-time high of 55, and only planted 5.9 acres of corn, which meant that he had "hardly any chores," contradicting his stated reasons for failing to attend physical therapy as prescribed. (R. at 114, 118.)  Moreover, this failure to comply with physical therapy—in and of itself—is a sufficient reason for discounting his credibility.  *See Sias v. Sec'y of Health & Hum. Servs.,* 861 F.2d 475, 480 (6th Cir.1988) (concluding that the ALJ properly discounted the claimant's credibility where he failed to follow prescribed treatment); S.S.R. 96–7p, 1996 WL 374186, at *8 (noting that "the individual's statements may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.").

In addition, even the evidence to which Plaintiff's cites in support of his position merely reiterates the information the ALJ did, in fact, clearly consider

with respect to Plaintiff's RFC.  First, the March 10, 2011 records occurred

immediately after Plaintiff presented to the hospital with a crush injury to his right

lower extremity.  The ALJ addressed this injury, and the medical records following

the injury that tended to show that Plaintiff's knee and back were improving.  (R.

at 49-52.)  The ALJ also discussed all of the relevant CT scans, Plaintiff's history

of seizures, and his ACL reconstruction.  (R. at 50.)  As a result, the ALJ limited

Plaintiff to sedentary work, which, at first blush, would appear to be *more*

*restrictive* than some of the work that Plaintiff admits he is actually doing.  (*See,*

*e.g.,* R. at 116, 516.)  Plaintiff does not indicate how the existence of medical

records to which the ALJ cited demonstrates that the ALJ erred in his credibility

analysis and corresponding RFC.  His blanket statement that "the Commissioner

failed to satisfy [her] burden of proof warranting reversal or remand," without

more, does not make it so.  (DE 9 at 9.)  The ALJ did not err either in her

credibility assessment, or in the RFC assigned and both are supported by

substantial evidence.

## 2.    The ALJ Propounded a Proper Hypothetical to the VE at Step 5

When, as here, an ALJ concludes that a claimant does not have the RFC to

perform his or her past relevant work, the burden shifts to the Commissioner to

show that Plaintiff "possesses the capacity to perform other substantial gainful

activity that exists in the national economy."  *Varley v. Sec'y of Health & Hum.*

20

*Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This requires the Commissioner to "make a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (internal citations omitted).

Such substantial evidence "may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments."  *Id.*  "A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform."  *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 927 (E.D. Mich. 2005).

Here, the ALJ concluded that Plaintiff could not perform his past relevant work because he was limited to a sedentary RFC, and his past work was performed at the medium to heavy exertional level.  She relied on the VE's testimony that there were sufficient jobs available in the regional economy at the sedentary exertional level that could be performed by an individual with Plaintiff's limitations.  Plaintiff argues that, because the ALJ discounted Plaintiff's credibility, her hypothetical to the VE did not reflect Plaintiff's impairments.  However, as addressed above, the ALJ's decision to discount Plaintiff's credibility was well-supported by the record.  Accordingly, it was not in error for the ALJ to

rely on the VE's response to a hypothetical question that mirrored Plaintiff's symptoms to the extent the ALJ considered them credible.

### 3.   The ALJ Appropriately Weighed Opinion Evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(d).  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).  "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists."  20 CFR § 404.1527(e)(2)(i).  The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants.  Id.

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. § 416.927(d)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  To qualify as a treating

22

source, the physician must have an "ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson*, 378 F.3d at 544 (discussing 20 C.F.R. § 404.1527).  Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion."  20 C.F.R. § 416.927(d)(2).  Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted).  The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the

23

agency's decision is supplied."  *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).  The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.

In his brief, Plaintiff provides a stock tutorial on the law of the treating physician's rule—without even identifying the treating physician whose opinion should have been given controlling weight—but does not specify how the ALJ purportedly erred in this matter.  (DE 10 at 12-14.)  In most cases, I would conclude that Plaintiff had waived the issue, but given the special circumstances in this case, I will address the ALJ's treatment of the opinion evidence.

The only opinion evidence of a treating physician were the reports of Plaintiff's treating physician, Dr. Fram.  (R. at 497-512.) The ALJ gave moderate weight to Dr. Fram's opinion that Plaintiff should avoid lifting more than twenty pounds with no working above shoulder level and no excessive bending, twisting, stooping, kneeling, pushing, or pulling.  However, the ALJ did not adopt the opinion in its entirety only because she found Plaintiff "*more limited* based on later received evidence, specifically, the claimant's right knee surgery in April 2012." (R. at 51) (emphasis added.)  Plaintiff does not describe, and the undersigned could not fathom, how the ALJ could have acted in error by assessing a more limited RFC than that opined by his treating physician.  Moreover, the ALJ gave good

reasons for assigning only moderate weight to the opinion; namely, that later-received evidence revealed that Plaintiff was more limited than Dr. Fram had opined. *See Warren v. Comm'r of Soc. Sec.*, No. 13-cv-13523, 2014 WL 3708565, at *4 (E.D. Mich. July 28, 2014) (affirming the ALJ's RFC as supported by substantial evidence, in part because the ALJ assessed a more restrictive RFC than that opined by the claimant's physicians).

### 4.   The ALJ's Decision is Supported by Substantial Evidence

A review of the record as a whole demonstrates that the ALJ's conclusion is supported by substantial evidence. Plaintiff suffered substantial injuries to his right side in 2010. However, the record reveals that Plaintiff failed to fully participate in physical therapy following the incident, against which his orthopedic surgeon warned. Also, following his 2012 ACL surgery, Plaintiff was instructed to "commit more time to strength training and even biking" because it was likely that "some of his discomfort [was] related to his persistent muscular weakness." (R. at 750.) Nothing in the record, or in Plaintiff's testimony, indicates that he followed this advice. The record does indicate, however, that his leg was getting stronger, his range of motion was improving, and that he was making good progress. (R. at 518; *see also* R. at 520, 589, 750.) Nevertheless, the ALJ thoughtfully considered Plaintiff's impairments and took them into account when assessing his RFC by limiting him to sedentary work with no foot controls on his injured side. (R. at 48.)

25

She also took into account his medication and anxiety issues by limiting him to performing simple, routine tasks. She then appropriately relied on the VE's response to her hypothetical questions to conclude that jobs existed in significant numbers in the regional economy for an individual with Plaintiff's limitations, and appropriately concluded that he was not disabled under the Social Security Act. Thus, it cannot "be said that the evidence supporting the ALJ's finding that Plaintiff is not disabled is non-existent." *See Salmo v. Comm'r of Soc. Sec.*, No. 11-14926, 2012 WL 6929176, at *4 (E.D. Mich. Nov. 27, 2012) *report and recommendation adopted*, No. 11-14926, 2013 WL 273205 (E.D. Mich. Jan. 24, 2013) (internal quotations omitted).

Plaintiff's brief supplied few facts or record citations, and remarkably little application of facts to law. Nevertheless, I have undertaken the task that Plaintiff's counsel should have performed and I see nothing in Plaintiff's briefing or in the record as a whole that should disturb the ALJ's conclusions.

### G.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

27

Objection No. 2," *etc.* If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: February 9, 2016         s/Anthony P. Patti
                                Anthony P. Patti
                                UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record
on February 9, 2016, electronically and/or by U.S. Mail.

                                s/Michael Williams
                                Case Manager for the
                                Honorable Antony P. Patti